IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

CHARLOTTE E. EVANS,

        Plaintiff,

   v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

No. 6:12-CV-00344-HZ

OPINION & ORDER

Richard F. McGinty
MCGINTY & BELCHER, PC
P.O. Box 12806
Salem, OR 97309

   Attorney for Plaintiff

Adrian L. Brown
U.S. ATTORNEY'S OFFICE, DISTRICT OF OREGON
1000 S.W. Third Ave., Suite 600
Portland, OR 97204

Nancy A. Mishalanie
SOCIAL SECURITY ADMINISTRATION

1 - OPINION & ORDER

701 Fifth Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075

     Attorneys for Defendant

HERNANDEZ, District Judge:

     Charlotte E. Evans brings this action pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security (the "Commissioner"). The Commissioner found Evans not disabled and denied her application for Title XVI Supplemental Security Income ("SSI"). For the reasons set forth below, the Commissioner's decision is REVERSED and this matter is REMANDED for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## PROCEDURAL BACKGROUND

     On January 27, 2009, Plaintiff applied for SSI disability benefits. R. at 122. A hearing was held before Administrative Law Judge Rudolph M. Murgo (the "ALJ") on January 24, 2011.[1] R. at 22. On June 16, 2011, the ALJ issued an opinion finding Plaintiff was not disabled and therefore not entitled to SSI. R. at 32. Plaintiff requested a review of the ALJ's decision, but the Appeals Council declined to grant Plaintiff's request on January 11, 2012, thus making the ALJ's June 16, 2011, decision the final decision of the Commissioner. R. at 1-3. This appeal followed.[2]

## FACTUAL BACKGROUND

     The parties are familiar with the medical evidence and other evidence of the record. Therefore, the evidence will not be repeated here except as necessary to explain my decision.

///

---

[1] Plaintiff was forty-six years old at the time of the hearing.
[2] Plaintiff did not file a reply brief.

2 - OPINION & ORDER

**SEQUENTIAL DISABILITY EVALUATION**

A claimant is disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. Id.

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141; see 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairments, has the residual functional capacity ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If so, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner.

In step five, the Commissioner must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141-42; see 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one of the sequential proceedings, the ALJ found Plaintiff had not engaged in substantial gainful activity since January 7, 2009. R. at 24, Finding 1. At step two, the ALJ found Plaintiff had the "following severe impairments: porphyria cutanea tarda, arthralgias, hepatitis C, osteoarthritis of the back, neck and hip with height of 5'6" and weight of 187 pounds, affective disorder, anxiety disorder, substance abuse, chronic neck and back pain, cervical osteophytes, neuroforaminal narrowing, cervical radiculitis, myofascial pain syndrome, [and] facet arthropathy". R. at 24, Finding 2. At step three, the ALJ found Plaintiff's impairments did not meet or equal the requirements of a listed impairment pursuant to 20 C.F.R. Part 404, Subpart P, Appendix 1. R. at 24, Finding 3.

At step four, the ALJ found Plaintiff had the RFC "to perform sedentary work as defined in 20 CFR 416.967(a) except she can sit 1 hour at a time, stand, and walk 1 hour at a time", "requires a sit/stand option", "can lift 20 pounds occasionally and 10 pounds frequently", "can do no grasping, twisting or turning objects and no overhead reaching." R. at 25, Finding 6. The ALJ also found Plaintiff "can do no pushing, pulling, kneeling, stooping or bending" and "is limited to simple, repetitive work with no public interaction and only occasional coworker interaction." Id. At step five, the ALJ found Plaintiff was not disabled because there were jobs

existing in significant numbers in the national economy that Plaintiff could perform.  R. at 31, Finding 9.

## STANDARD OF REVIEW

A court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record.  Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986).  "Where the evidence as a whole can support either a grant or a denial, [a court] may not substitute [its] judgment for the ALJ's."  Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted).

The initial burden of proof rests upon the claimant to establish disability.  Howard, 782 F.2d at 1486.  To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ."  42 U.S.C. § 423(d)(1)(A).

## DISCUSSION

Plaintiff makes the following assignments of error by the ALJ: (1) the ALJ failed to properly evaluate the medical evidence; (2) the ALJ failed to properly evaluate lay witness testimony; and (3) the ALJ failed to resolve the conflict between the testimony of vocational expert Nancy Bloom (the "VE") and the Dictionary of Occupational Titles ("DOT").

5 - OPINION & ORDER

**I. Medical Evidence**

Plaintiff argues that the ALJ's decision is erroneous because the ALJ did not properly evaluate the evidence provided by her medical providers. The weight given to the opinion of a physician depends on whether it is from a treating physician, an examining physician, or a non-examining physician. See Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007). More weight is given to the opinion of a treating physician who has a greater opportunity to know and observe the patient as an individual. Id. If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. Id.; Widmark v. Barnhart, 454 F.3d 1063, 1067 (9th Cir. 2006). Even if the opinion is contradicted by another physician, the ALJ may not reject it without providing specific and legitimate reasons supported by substantial evidence in the record. Orn, 495 F.3d at 632; Widmark, 454 F.3d at 1066; see also Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999).

The opinion of a non-examining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. Widmark, 454 F.3d at 1066 n.2. However, it may serve as substantial evidence when it is supported by and consistent with other evidence in the record. Morgan, 169 F.3d at 600.

**A. Dr. Marvin Roman, M.D. and Megan Seeley, FNP**

Plaintiff asserts the ALJ failed to incorporate the functional limitations included in the Multiple Impairment Questionnaire ("MIQ") completed by Seeley and co-signed by Dr. Roman on August 10, 2010. R. at 521-28. I agree.

In the MIQ, Seeley and Dr. Roman determined that Plaintiff was only able to sit up to 1 hour in an 8-hour day and stand or walk up to 1 hour in an 8-hour day. R. at 27, 521-28. Seeley

and Dr. Roman also determined that Plaintiff's condition interfered with her ability to keep her "neck in a constant position", Plaintiff's symptoms "would constantly interfere with [her] attention and concentration", Plaintiff was only capable of "low stress work", Plaintiff "would need unscheduled breaks every hour for 10 minutes", and Plaintiff "would be absent from work more than three times a month." Id. The ALJ gave the "opinion of nurse practitioner Seeley and Dr. Roman . . . some weight", reasoning that "while [Plaintiff] may require a sit/stand option for relief of pain", the medical evidence in the record did "not support a finding that [Plaintiff could] . . . sit only 1 hour out of an 8-hour day, stand, and walk 1 hour out of an 8-hour day" because the "only clinical findings described [were] . . . tenderness to palpation and decreased range of motion." R. at 27. The ALJ also reasoned that while Plaintiff "reported marked improvement in her pain with medications", she was "able to perform self-care activities, work for Avon cosmetics, and travel to Tennessee". Id. Lastly, the ALJ reasoned that the evidence did not "establish constant interference with attention and concentration provided [Plaintiff] . . . engaged in simple types of work" and that the "August 2010 treatment notes specifically indicate[d Plaintiff] . . . had no difficulty concentrating". Id.

   Even assuming that the ALJ properly discounted most of the limitations assessed by Seeley and Dr. Roman, the ALJ failed to proffer legally sufficient reasons for discounting Seeley and Dr. Roman's assessment that Plaintiff was only capable of "low stress work". The Commissioner contends that the "ALJ accommodated Plaintiff's lower tolerance for stress by limiting her to simple, repetitive work with no public interaction and only occasional coworker interaction". Resp., p. 8. The Commissioner, however, points to no authority showing that simple, repetitive work with no public interaction and only occasional co-worker interaction properly accommodates a low-stress limitation. Similarly, nothing in the record before me

establishes that simple, repetitive work with no public interaction and only occasional co-worker interaction translates into a low-stress work environment or accommodates a low-stress limitation. In short, the ALJ failed to properly incorporate the functional limitations included in the MIQ completed by Seeley and Dr. Roman. The ALJ's RFC was therefore legally insufficient and in turn, the ALJ's ultimate non-disability determination cannot be upheld.

### B. Charlton Stanley, Ph.D.

Plaintiff argues that the ALJ improperly discounted Dr. Stanley's opinion that she was functionally limited in persistence and concentration. The Commissioner contends that the ALJ properly discounted Dr. Stanley's opinion because it was inconsistent with his own clinical findings and was unsupported by objective evidence. The Commissioner's arguments are unavailing.

The ALJ gave "little weight" to Dr. Stanley's opinion that Plaintiff's "[p]ersistence and concentration was moderately to markedly impaired". R. at 29. In support of his conclusion, the ALJ reasoned that "[w]hile [Plaintiff] exhibited some limitations in persistence and concentration on mental status examination, she exhibited well-organized thinking patterns and a fair degree of higher executive functioning, with intact short-term memory". R. at 29. The ALJ further reasoned that "[t]hese findings support an ability to engage in simple, repetitive tasks with no public interaction and limited coworker interaction." Id.

The problem with the ALJ's reasoning is that well-organized thinking patterns, a fair degree of higher executive functioning, and intact short-term memory do not necessarily conflict with moderately to markedly impaired persistence and concentration. In addition, discounting Dr. Stanley's opinion because it conflicted with the ALJ's own RFC determination, namely that Plaintiff "is limited to simple, repetitive work with no public interaction and only occasional

coworker interaction", was improper. R. at 26, Finding 6; R. at 29. The RFC is meant to incorporate the limitations set forth by the medical evidence in the record. Using it to find inconsistencies in the medical evidence themselves is circular reasoning which does not amount to a legitimate basis to discount Dr. Stanley's medical opinion.

The Commissioner also contends that the ALJ properly rejected Dr. Stanley's opinion because it "appear[ed] to be a generalization based on [his] diagnoses, rather than based on specific findings from the examination." Resp., p. 10. This reason, however, was not proffered by the ALJ. A court may "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630 (citation omitted). It would therefore be improper for me to accept the above argument now proffered by the Commissioner because such argument was not provided by the ALJ.

Based on the above, I conclude that the ALJ improperly discounted Dr. Stanley's opinion.

### C. Ralph Barr, M.D., and Dee Gunderson, M.S.N.

Plaintiff asserts that the ALJ erred in rejecting the assessments of Dr. Barr and Gunderson. I disagree.

The record shows that the ALJ gave "no weight" to the following opinions of Dr. Barr and Gunderson:

> [Plaintiff] was moderately limited in the ability to carry out simple and complex instructions, maintain attention and concentration for extended periods, and perform activities within a schedule. She was moderately limited in the ability to make simple work-related decisions and markedly limited in the ability to complete a normal workweek without interruptions from psychologically based symptoms. She was markedly limited in the ability to interact with the public, accept instructions from supervisors, and get along with coworkers. She was moderately limited in the ability to maintain socially appropriate behavior, and

9 - OPINION & ORDER

respond to changes in the work setting. She was incapable of even low stress work. She would be absent from work more than 3 times a month. The described symptoms and limitations had been present since age 11 or 12.

R. at 29.

The ALJ rejected Dr. Barr's and Gunderson's medical opinions for the following reasons:

[Plaintiff] had been a client [of Dr. Barr and Gunderson] for only 4 days at time of the assessment and the treatment notes from the time period of the report are minimal and contain no testing or mental status examination. . . . Subsequent progress note on May 18, 2009 reflects there was no mental status examination but she presented with depressed mood and blunt affect. No other objective findings were noted. The opinion of . . . [Dr. Barr and Gunderson] is based entirely on the claimant's self-report of symptoms. It appears she had been seen only once at the time of their opinion and their treatment notes contain no formal mental status examination or testing. Despite this minimal contact with the claimant and lack of any formal assessment, they find marked limitations extending back to childhood.

Id. (citation omitted).

Plaintiff asserts that the ALJ was required to give Dr. Barr's and Gunderson's opinions controlling weight because Dr. Barr was her treating physician. Plaintiff also contends that Dr. Barr and Gunderson conducted mental status exams and assigned her with a Global Assessment Function ("GAF") of 45.[3] Finally, Plaintiff argues that the ALJ erroneously substitutes his lay opinion for that of Dr. Barr's because other evidence in the record supports Dr. Barr's opinion that her limitations extend back to childhood.

Plaintiff's arguments miss the mark. "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (citation

---

[3] A GAF of 45 indicates "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 27-30 (4th ed. 2000).

10 - OPINION & ORDER

and internal quotation marks omitted). Here, Dr. Barr's and Gunderson's assessments are conclusory and unsupported by clinical findings. The medical documentations signed by Dr. Barr and Gunderson are mostly unfilled and are absent any statement establishing that a mental status exam was even performed. See R. at 482-84, 506-09. The fact that other evidence in the record may support Dr. Barr's and Gunderson's opinions does not render the ALJ's decision to reject Dr. Barr's and Gunderson's conclusory opinions improper. In short, the ALJ provided legally sufficient reasons for rejecting Dr. Barr's and Gunderson's medical opinions.

### D. Centerstone Community Mental Health Center Medical Professionals

Plaintiff argues that the ALJ erred by not accordingly any weight to the opinions of Plaintiff's "other sources", including "therapist Susan O'Malley (LPC-MHSP), Lisa Peden (BS), Phyllis Viltz Sipe, Rebecca Kennedy (BS), Sheila Smith (LCSW, MSW)." Pl.'s Br., p. 22. Plaintiff's argument fails.

An ALJ may discount "other source" opinions by providing "germane reasons" for doing so. Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). Here, Plaintiff does not argue, let alone cite any evidence showing, that Peden, Sipe, or Kennedy assessed Plaintiff with any limitations. Rather, Plaintiff simply argues that O'Malley opined that she had a GAF of 45 and Smith reported that she was experiencing "vegetative disturbance" documented by crying, energy, interest, pleasure, and sleep.

The portion of the record on which Plaintiff relies shows that Smith is a therapist who signed one of Plaintiff's Outpatient Treatment Progress Notes.[4] R. at 353. Plaintiff's Outpatient Treatment Progress Notes state, in relevant part, that Plaintiff's GAF score of 45 was "[c]reated by" O'Malley on April 30, 2009. Id. The ALJ discounted Smith's opinion because it was

---

[4] Plaintiff cites page 741 of the record for the proposition that Smith reported Plaintiff was experiencing a "vegetative disturbance". Pl.'s Br., p. 23. There is, however, no page 741 in the record.

11 - OPINION & ORDER

"based entirely on [Plaintiff's] self-report of symptoms", because it "appear[ed] [Plaintiff] had been seen only once at the time of [Smith's] opinion", and because Smith's "treatment notes contain[ed] no formal mental status examination or testing." R. at 29.

An ALJ may reject a physician's opinion if it is based "to a large extent on a claimant's self-reports that have been properly discounted as incredible." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citations and internal quotation marks omitted). Here, the ALJ concluded that Plaintiff was not credible. R. at 26. Plaintiff does not challenge the ALJ's adverse credibility finding. Because an ALJ may properly disregard medical opinions that are based to a large extent upon the claimant's own accounts of her symptoms and limitations, as here, I conclude the ALJ provided a germane reason for discounting Smith's and O'Malley's opinions.

In sum, the ALJ did not err when accordingly no weight to the "other source" opinions.

### E. Aileen McAlister, M.D.

Plaintiff argues that the ALJ erred by not including in her RFC that "[c]hange in the work place should be introduced slowly" as opined by Dr. McAlister, a non-examining psychological consultant. Plaintiff's argument is misplaced. A careful reading of the record shows that Dr. McAlister's statement is merely a recommendation and is not a functional limitation that the ALJ was required to include in the RFC. Accordingly, the ALJ did not err by excluding Dr. McAlister's recommendation from Plaintiff's RFC.

## II. Lay Witness Statements

Plaintiff contends the ALJ improperly rejected the lay witness statements of her mother, Jo Ann Flake, and her sister, Gwendolyn Hawley. Lay testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless he provides "specific reasons

that are germane to each witness." Fleming v. Comm'r of Soc. Sec. Admin., No. 11-35997, 2012 WL 6053165, at *2 (9th Cir. 2012) (citation omitted). When "the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1056 (9th Cir. 2006).

The record here shows that Flake filled out a third-party function report stating that "in July 2009 . . . [Plaintiff] did very little" and that Flake "did the household chores." R. at 30. The report also states that Plaintiff had "problems lifting, bending, standing, walking, sitting and climbing stairs", "had difficulties completing tasks, following instructions, and concentrating", and "could walk 1 block before resting". Id. Similarly, Hawley's third-party function report states that "in July 2009[,] . . . [Plaintiff] did not do housework other than keeping up her room", had "problems lifting, bending, standing, walking, sitting and kneeling", and had "problems with memory, concentration, completing tasks, and following instructions". Id.

The ALJ found Flake's and Hawley's statements "not entirely credible" because Plaintiff "reported in March 2009 that she did some light cleaning, cooking and laundry" and because the "evidence support[ed] a finding [that Plaintiff] is capable of simple types of tasks with limited lifting, standing, walking and sitting." R. at 30.

The ALJ's reasons for disregarding Flake's and Hawley's lay witness statements are not specific or germane. Specifically, Flake's statements that Plaintiff could only do "very [l]ittle" with regard to household chores and Hawley's statement that Plaintiff "is only able to keep up her room" are not inconsistent with Plaintiff's own statements that she could only do "very little" or "not much" at all, including "very little dusting, wiping off counters[, and] light dishes". R. at

13 - OPINION & ORDER

158, 183, 198, 215, 224. Indeed, the portion of the record on which the ALJ himself relies simply shows that Plaintiff stated that she "help[s] do some light cooking, cleaning, and laundry." R. at 290. Plaintiff's statement that she can "help" with "some" household chores is not inconsistent with Flake's and Hawley's statements that Plaintiff has trouble with household chores. Additionally, even assuming as true that evidence in the record shows that Plaintiff is "capable of simple types of tasks with limited lifting, standing, walking and sitting", such evidence is not inconsistent with Flake's and Hawley's statements that Plaintiff has physical limitations. R. at 30. To the contrary, under the circumstances here, such statements bolster Flake's and Hawley's lay witness statements.

Based on the above, I conclude that the ALJ improperly rejected Flake's and Hawley's lay witness statements. The ALJ's error was not harmless because a reasonable ALJ, when fully crediting Flake's and Hawley's statements, could have reached a different disability determination.

## III. Conflict Between the VE Testimony and the DOT

Plaintiff asserts that the ALJ's finding of non-disability is not supported by substantial evidence because there is an inherent conflict between the ALJ's RFC determination and the DOT surveillance system monitor position, which the VE testified Plaintiff could perform.[5] Having concluded that the ALJ's finding of non-disability is not supported by substantial evidence and was legally erroneous, I need not address this issue.

---

[5] A surveillance-system monitor has the following job description under DOT 379.367-10:
> Monitors premises of public transportation terminals to detect crimes or disturbances, using closed circuit television monitors, and notifies authorities by telephone of need for corrective action: Observes television screens that transmit in sequence views of transportation facility sites. Pushes hold button to maintain surveillance of location where incident is developing, and telephones police or other designated agency to notify authorities of location of disruptive activity. Adjusts monitor controls when required to improve reception, and notifies repair service of equipment malfunctions.

14 - OPINION & ORDER

**IV. Remand**

Plaintiff requests that this Court remand this case for the immediate award of benefits and requests that this Court "order the Commissioner to credit as true [sic]". Pl.'s Br., p. 28.  I disagree with Plaintiff and conclude that the circumstances here do not warrant a remand for an immediate award of benefits or application of the credit-as-true doctrine.

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court.  Harman v. Apfel, 211 F.3d 172, 1178 (9th Cir. 2000).  The issue turns on the utility of further proceedings.  A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision.  Strauss v. Comm'r of the Soc. Sec. Admin., 635 F.3d 1135, 1138-39 (9th Cir. 2011) (quoting Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)).  Under the credit-as-true rule, evidence should be credited and an immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.  Strauss, 635 F.3d at 1138.

Here, there are outstanding issues that must be resolved before a determination of disability may be made.  It is also unclear from the record that the ALJ would be required to find the claimant disabled if the disputed evidence were credited.  Furthermore, the record fails to reveal what jobs may exist in the national economy within Plaintiff's RFC if the ALJ were to properly elicit testimony from a VE.  The Court therefore declines to direct the immediate payment of benefits under the circumstances here.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED and this matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings to address the errors discussed above. If necessary, the ALJ is to revise Plaintiff's RFC determination and incorporate any revised findings, if applicable, into the ALJ's conclusions at steps four and five of the sequential analysis.

IT IS SO ORDERED.

Dated this 14 day of May, 2013.

MARCO A. HERNANDEZ
United States District Judge

16 - OPINION & ORDER